UNITED STATES of America, Appellee,

v.

Sime DIJAN, Appellant.

UNITED STATES of America, Appellee,

v.

John MARZULLO, Appellant.

Nos. 93–2599, 93–2921.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1994.

Decided Oct. 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 15, 1994 in No. 93–2921.

Rehearing Denied Dec. 2, 1994 in No. 93–2599.

---

Mary E. Ott, Clayton, MO, argued (J. Martin Hadican, on the brief), for Dijan.

Daniel P. Reardon, Clayton, MO, argued, for Marzullo.

James Crowe, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MICHAEL J. MELLOY, Chief District Judge.*

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Sime Dijan and John Marzullo were indicted along with four others for conspiracy to bribe a revenue agent of the Internal Revenue Service, bribery of the revenue agent, money laundering, and wire fraud. Dijan and Marzullo were named in nine of the fourteen counts of the indictment; a jury convicted Marzullo of all nine counts, and convicted Dijan of seven of the nine counts, having failed to reach a verdict with respect to Dijan on the other two counts. The trial court[1] sentenced Dijan to 84 months in prison, and Marzullo to 121 months. They appeal their convictions and sentences.

## I.

We recite hereafter such facts as the evidence would support a reasonable person in believing.

In October of 1989 Dijan and Marzullo, through Sun Bay Group, a holding company that they controlled, acquired Envirocon International Corporation. Envirocon had several hundred employees in twelve states and specialized in asbestos abatement, wrap insulation, and fireproofing. Envirocon had been in business for more than thirty years. Shortly after acquiring Envirocon, Dijan and Marzullo began diverting Envirocon's cash receipts to themselves, to Sun Bay, and to other subsidiaries of Sun Bay, driving Envirocon to bankruptcy within eight months. They accomplished this by failing to pay Envirocon's creditors while more than doubling their own salaries, reimbursing themselves for personal expenses as if they were business expenses, paying salaries and consulting fees to members of Marzullo's family who did little or no work for Envirocon, and transferring funds to Sun Bay and Sun Bay's subsidiaries. Beginning in November of 1989, at the direction of Dijan and Marzullo, Envirocon stopped paying to the Internal Revenue Service the payroll taxes withheld from its employees. By the end of 1989, Envirocon owed more than eight hundred thousand dollars for unpaid payroll taxes for the fourth quarter of 1989, not including interest and penalties; by the end of March, 1990, Envirocon had failed to pay to the IRS an additional $789,000 for payroll taxes for the first quarter of 1990. In April of 1990, Envirocon stopped making payments to the appropriate parties money withheld from the paychecks of its employees pursuant to orders of garnishment. By April of 1990, Envirocon had ceased making payments to its employee's health insurance carrier and to their pension plans. In spite of Envirocon's growing difficulty in meeting its debts, caused in large part by the diversion of its assets, including receivables, that Dijan and Marzullo ordered, the defendants more than doubled their salaries from October, 1989 to February, 1990. The government established at trial that Dijan and Marzullo had defrauded Envirocon's employees and creditors, including the IRS, by diverting its operating funds and other assets to themselves or their other businesses or members of their families.

The conspiracy to bribe an IRS agent in order to abate liability for taxes had its genesis in the fall of 1988 when Scott Kootman

* The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Stephen N. Limbaugh, District Judge, United States District Court for the Eastern District of Missouri.

attempted to bribe Revenue Agent Noel Baker in Missouri. Baker notified his supervisors and the Inspection Division of the IRS of Kootman's overtures. He was told not to suggest anything to Kootman, but to allow Kootman to make an attempt to bribe him if that was Kootman's intention. Kootman introduced others to Baker to discuss bribes to cancel taxes owed to the government. Through Kootman and others, Baker met Jeffrey Wolfson, one of the conspirators indicted with Dijan and Marzullo. Baker, still following the instructions of the Inspection Division, did not invite or suggest bribes, and did tape-record most of the conversations he had with the alleged conspirators. He acted, in effect, as an undercover agent.

In July of 1989 Wolfson and Howard Bloom, Bruce Margo, Jeffrey Wolfson, and Carl Pugliese arranged to pay Baker a bribe of fifteen percent of outstanding corporate and personal taxes in order to avoid paying the full amount of those taxes. Wolfson, Bloom, Margo, and Pugliese were indicted with Dijan and Marzullo. Bloom had business interests in Missouri and Florida, where Sun Bay and Envirocon had its offices. He cooperated with the government in its investigation of the conspiracy and testified at the trial of Dijan and Marzullo.

Dijan and Marzullo first became involved in the conspiracy in late 1989. Dijan met Bloom in October of 1989. Bloom soon became involved in trying to obtain financing for Envirocon. Bloom, Margo, Dijan, Marzullo, and others attended a meeting in the fall of 1989 to discuss financing for Envirocon and its parent Sun Bay. At that meeting Margo let it be known that he could fix taxes. In January of 1990, Bloom learned that Envirocon had failed to pay its payroll taxes for the fourth quarter of 1989. At that time, he discussed with Baker the possibility of bribing Baker to erase those taxes. In February, Dijan asked Bloom if his friend Margo could fix the taxes; Marzullo did not want to take any action at that time. At the end of March, Jerry Haxton, a Revenue Officer in the IRS office in Tampa, Florida, visited Sun Bay to obtain the quarterly tax return for the fourth quarter of 1989, a return that still had not been filed. Haxton's attention had

been drawn to Sun Bay and Envirocon when Jean Bea, an accounting supervisor at Envirocon, had reported to the Criminal Investigation of the IRS in Tampa that Envirocon was not paying its employment taxes and was diverting company funds for the personal use of Dijan and Marzullo. Haxton's action was, at first, unrelated to Baker's undercover operation in Missouri. His action nonetheless put pressure on Dijan and Marzullo to address their rapidly growing tax liability.

Dijan and Marzullo provided Haxton with a fraudulent return and, with Bloom and Margo, bribed Baker to fix the taxes. Dijan and Marzullo agreed to pay twenty percent of the taxes due, five percent for Margo, and fifteen for Baker. Dijan and Marzullo made arrangements to pay Baker and Margo $120,000 and to structure the transaction in such a way that it could appear in the accounting records of Envirocon without raising suspicions. On Friday, April 6, 1990, Bloom, Margo, Dijan, and Baker met in St. Louis to pay the bribe to Baker. Margo had difficulty withdrawing the full amount from the Missouri bank that held the funds that had been transferred from Florida; the conspirators paid Baker only $28,000 on that day, but promised to pay the balance by the following Monday. Payment to Baker was not in fact made until several days later. During that time Dijan and Marzullo prepared the fraudulent tax return and a photocopied a check that was never to be negotiated in order to convince Haxton that the taxes had been paid. Haxton learned of the undercover operation on April 9.

An additional bribe followed by the end of the month to erase employment taxes owed for the first quarter of 1990. Envirocon was still failing to pay the taxes and plans were made to bribe Baker to cancel the taxes for the second quarter and also Marzullo's personal tax liability of $98,000. These bribes were not consummated, however, because Dijan, Bloom, and Margo were arrested on May 23, 1990. The IRS took over Sun Bay and Envirocon. Marzullo continued to divert Envirocon's assets by using his corporate American Express card to purchase $5,000 of goods and services during the weekend fol-

lowing Dijan's arrest. Marzullo was not charged until September.

## II.

Dijan makes three arguments for the reversal of one or more of his convictions, and three arguments that the trial court did not impose the proper sentences under the Sentencing Guidelines. Marzullo joins in two of the first three, and two of the second.

Both appellants argue that the government failed to comply with the provisions of the Jencks Act, 18 U.S.C. § 3500 et seq., and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government failed, according to Dijan, to provide discovery of the following materials: 1) Envirocon's records of its accounts payable; 2) the IRS manual for collection procedures that Baker and Haxton used; and 3) Haxton's and Baker's employment records, and any communications between the IRS offices in Tampa, Florida and St. Louis, Missouri. Appellants' argument is without merit. The district court[2] found that the government had complied with the Jencks Act and with *Brady,* and had produced the documents that it had seized from the offices of Envirocon. Records of the accounts payable were even introduced into evidence at trial. The Internal Revenue Manual that Appellants sought is public. Finally, Haxton and Baker testified at trial that their offices had no contact with respect to this case prior to April 9, 1990; Bea's testimony together with that of Haxton make it clear that the IRS office in Tampa began its investigation of Envirocon prior to April 9 in response to Bea's notification that payroll taxes were not being paid. It is the role of the district court to determine whether information should be produced pursuant to the Jencks Act. *United States v. Grunewald,* 987 F.2d 531, 535 (8th Cir.1993). We will uphold the district court's ruling unless it is clearly erroneous. The district court found that the Jencks Act had been complied with; Appellants have not convinced us that this conclusion was clearly erroneous.

Dijan's second argument is apparently that he is entitled to a new trial because his trial should have been severed from Marzullo's, and because Counts 12, 13, and 14, the counts of fraud, should have been severed from the counts relating to the bribery. The decision of whether to grant severance is within the sound discretion of the district court. *United States v. Adkins,* 842 F.2d 210, 212 (8th Cir.1988). "We have stated that '[r]arely, if ever, will it be improper for co-conspirators to be tried together.'" *United States v. Wint,* 974 F.2d 961, 965 (8th Cir.1992) (quoting *United States v. Drew,* 894 F.2d 965, 968 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993). The same standard applies with respect to Dijan's motion to sever the final three counts from the rest of the trial: The "joinder of all offenses against a defendant is a favored practice and we will not reverse the district court's refusal to grant severance absent a clear abuse of discretion." *United States v. Humphreys,* 982 F.2d 254, 259 (8th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 61, 126 L.Ed.2d 31 (1993). Here, as in *Humphreys,* "the evidence in each set of counts is mutually admissible to show [the defendant's] motive, intent, and pattern of criminal behavior and to negate [his] defenses." 982 F.2d at 259. Dijan has not shown how the refusal to sever his trial from Marzullo's and to try him separately for the final three counts prejudiced him, and he has not convinced us that the trial court abused its discretion.

Appellants argue that the trial court should have granted their motions for judgment of acquittal because the evidence presented at trial showed not one conspiracy, as the indictment had alleged, but many. This argument is without merit. It is well established that the essence of a conspiracy is an agreement to commit an illegal act. *United States v. Roark,* 924 F.2d 1426, 1429 (8th Cir.1991). "Multiple groups and the performance of separate crimes or acts do not rule out the possibility that one overall conspiracy exists." *Roark, supra,* 924 F.2d

---

**2.** The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Mis-souri, whose order and recommendation Judge Limbaugh adopted.

at 1429. The record reveals overwhelming evidence of Dijan's and Marzullo's intimate involvement with each other and with at least five others in a scheme to bribe Baker in order to erase Envirocon's taxes. We may only reverse a denial of a motion for acquittal if, viewing the evidence in the light most favorable to the government, we conclude that a reasonable jury must have a reasonable doubt as to any of the essential elements of the crime charged. *United States v. De-Luna,* 763 F.2d 897, 924 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). On this record we cannot reach such a conclusion.

### III.

We turn now to Appellants' challenges to their sentences. The trial court sentenced Dijan and Marzullo using the 1989 Sentencing Guidelines. Under those guidelines, the base offense level for bribing a government official is level ten. U.S.S.G. § 2C1.1(a). The trial court increased this by two levels because it found that the offense involved more than one bribe. U.S.S.G. § 2C1.1(b)(1). Appellants argue that there was only one bribe. The trial court's conclusion that there was more than one bribe is amply supported by the evidence.

 Under the Guidelines, if the benefit to be received in return for the bribe exceeds two thousand dollars, the offense level is to be increased according to the table set forth for crimes of fraud and deceit. U.S.S.G. § 2C1.1(b)(2)(A). There is no doubt that the benefit received here exceeds two thousand dollars. The district court found that the benefit received as a result of the conspiracy exceeds $1,500,000. This results in an increase of twelve levels. U.S.S.G. § 2F1.1(b)(1)(M). Dijan argues that the benefit received was less than that amount. In a case involving bribery to cancel tax liability, the value of the benefit received from the bribe is the amount of the tax liability that the defendant sought to eliminate. *United States v. Ziglin,* 964 F.2d 756, 758 (8th Cir.1992). "It is irrelevant that the taxes that were to be avoided as a result of the bribery scheme were the taxes of third parties...." *Ziglin, supra,* 964 F.2d at 756

n. 3. The conspiracy here involved bribes to negate the taxes of Envirocon and Marzullo. Envirocon owed taxes, excluding penalties and interest, of $803,000 for the fourth quarter of 1989, and $789,000 for the first quarter of 1990. Employment taxes for Envirocon and related companies for the second quarter of 1990 had reached $530,000 by the end of May. Marzullo owed almost $82,000 in personal income tax. The twelve-level increase of which Dijan complains applies if the benefit received was more than $1,500,000 and less than $2,500,000. The unpaid employment taxes for Envirocon and its related companies exceeded $2,100,000. We cannot say that it was erroneous for the court to have concluded that the benefit received from the bribes was between 1.5 and 2.5 million dollars. Increasing Dijan's offense level by twelve levels was not improper.

 Appellants' final challenge is to the four-level increase imposed because he was an organizer or leader of the criminal activity of which he was convicted. The offense level of an organizer or leader of a criminal activity that involved five or more persons or was otherwise extensive is to be increased by four levels. U.S.S.G. § 3B1.1(a). Each Appellant argues that he was not a leader or organizer. The trial court found that the criminal activity involved more than five people: Dijan, Marzullo, and the other four indicted co-conspirators as well as other unindicted co-conspirators. The court found that Dijan and Marzullo operated and led the conspiracy: Dijan decided to contact Baker regarding the bribe to fix Envirocon's taxes and traveled to St. Louis to see Baker face to face in order to decide whether to go through with bribe. The decision to go ahead with the bribe rested with both Dijan and Marzullo: Dijan wanted to try to bribe the IRS in early 1990; Marzullo approved the bribes by April of that year. The court also found that the criminal activity was "otherwise extensive" within the meaning of Section 3B1.1(a) of the Guidelines. We will reverse the trial court's determination of a defendant's role in an offense only if that determination was clearly erroneous. *United States v. Nelson,* 988 F.2d 798, 809 (8th Cir.), *cert. denied,* —— U.S. ——,

**404**

114 S.Ct. 302, 126 L.Ed.2d 250 (1993). The record supports the trial court's finding that Dijan and Marzullo were organizers or leaders of a criminal activity within the meaning of Section 3B1.1(a).

## IV.

Marzullo was granted leave to file a brief pro se in which he raised several issues, some of which were addressed in his attorney's brief and have been considered above. We have reviewed the additional issues Marzullo raised in his brief and find none of them to have merit.

## V.

For the reasons given, we affirm the convictions of Dijan and Marzullo and their sentences.