UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas E. MULDOON,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Thomas E. MULDOON,
Defendant–Appellee.

Nos. 90–5020, 90–5023.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1990.

Decided April 30, 1991.

Albert James Ahern, Jr., Alexandria, Va., argued, for defendant-appellant.

Jack Hanly, Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., Joseph J. Aronica, William G. Otis, Asst. U.S. Attys., Alexandria, Va., on brief), for plaintiff-appellee.

Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

Thomas E. Muldoon appeals a judgment entered on the verdict of a jury convicting him of three counts of bribery of a public official in violation of 18 U.S.C. § 201(b), three counts of violating the Travel Act, 18 U.S.C. § 1952, and conspiracy to commit these offenses and defraud the United States in violation of 18 U.S.C. § 371. Finding no cause for reversal in his numerous assignments of error, we affirm.

I

Muldoon operated a consulting firm that paid money to a Marine Corps employee, Jack Sherman, who supervised award of some government defense contracts. From late 1981 through January of 1988, Muldoon received payments from Lee Telecommunications Corporation or Whittaker Corporation (collectively LTC) that he then paid to Sherman after he deducted from one-half to two-thirds as his own compensation. Muldoon was involved with several separate payments, and from time to time he would submit invoices from his consulting firm to conceal the bribes.

In the first scheme LTC paid Muldoon $75,000. Muldoon later paid Sherman $25,000 of this sum for Sherman's help to LTC in obtaining a government contract for the Data Link Emulator (DLE). Muldoon received $10,000, which he split with Sherman to expedite the DLE contract. The company paid $65,000 to Muldoon, who in turn paid one-third to Sherman to expedite the award of a contract related to the DLE. In September 1987, Muldoon entered into an agreement with LTC to pay him $2,000 monthly. He would then pass $1,000 of that payment to Sherman. This arrangement, however, was short lived because

Muldoon protested there was not enough money in it for him. Shortly afterwards, in January 1988, LTC and Muldoon entered a new agreement. This time, LTC paid Muldoon $36,000, who paid $12,000 to Sherman for his help to LTC in connection with other contracts with the Marine Corps. In sum, Muldoon received approximately $188,000 from LTC, of which he paid Sherman approximately $65,000.

## II

Muldoon assigns error to the district court's denial of his pretrial motion to suppress evidence obtained by wiretaps. He contends that the affidavit submitted with the initial application for a tap failed to show probable cause that he had committed any of the offenses mentioned in the affidavit. He emphasizes a sentence in the affidavit that acknowledged the investigator's ignorance of his background and status other than that provided by an informer, John Marlowe. Muldoon complains that the affidavit fails to show that other investigative procedures were inadequate. He also assigns error to the court's denial of an evidentiary hearing on his allegations that the affidavit was false and misleading.

To authorize a wiretap, there must be (a) probable cause to believe that a suspect has committed or is about to commit an offense, (b) probable cause to believe that communications concerning the offense will be obtained, and (c) a finding that normal investigative procedures are inadequate or reasonably appear inadequate. 18 U.S.C. § 2518(3).

The affidavit discloses that Muldoon was doing much more than innocently collecting information from the Department of Defense and selling it to defense contractors. The affidavit disclosed that in a recorded conversation with Marlowe, Sherman, Muldoon's government contact, complained that Muldoon owed him $7,000 in payment for information Sherman had furnished Muldoon. Another recorded conversation disclosed that Muldoon had paid Sherman $6,000 on another deal for inside information. From Muldoon's conversations with another consultant, whose phone had been tapped by authority of a previous court order, the investigators learned, and the affidavit recounted, that Muldoon was planning to obtain information about another project to sell to defense contractors for which he would "have to pay the guy he takes care of...."

■ Wiretaps may be authorized for the detection of bribery of a public official. § 2516(1)(c). To determine the sufficiency of a warrant, the reviewing court must ensure that the issuing officer had a substantial basis for determining from the totality of the circumstances that probable cause existed. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). The affidavit disclosed sufficient facts to establish probable cause to believe that Muldoon had bribed a government employee and that he was scheming to pay another bribe for information that he could sell to defense contractors. The affidavit passes the test prescribed by *Illinois v. Gates*. *See also United States v. Gallo*, 863 F.2d 185, 191 (2d Cir.1988).

■ Contrary to Muldoon's complaint, the affidavit showed, as required by § 2518(1)(c), that other investigative procedures were inadequate. Marlowe, who informed for the government, had been jailed on unrelated state convictions. He had been able to supply information to the government because he, too, was a consultant whom the other consultants trusted to traffic in Defense Department influence and information. But he was no longer available. The affidavit explained the difficulty of introducing another informant to Muldoon's coconspirators. The government's investigation showed Muldoon and other consultants conducted business by phone, making physical surveillance and search warrants inappropriate. "The showing of need [for the tap] is 'to be tested in a practical and commonsense fashion.'" *United States v. Clerkley*, 556 F.2d 709, 714 (4th Cir.1977) (citations omitted). The affidavit satisfies this test and complies with the statute.

To expose the alleged inadequacies of the affidavit, Muldoon requested an evidentiary hearing. He assigns error to the district court's denial of his motion. Muldoon criticizes the failure of the affidavit to report Marlowe's complete criminal record and to disclose that he was a paid informant. He says these omissions demonstrated that the affidavit is deliberately or recklessly false.

■ *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), explains that a defendant is entitled to an evidentiary hearing upon "substantial preliminary showing" that the affiant made "a false statement knowingly and intentionally, or with reckless disregard for the truth." The allegedly false statement must be necessary to the finding of probable cause. Muldoon has not satisfied the preliminary showing required by *Franks*. The affidavit disclosed that Marlowe had been convicted of two offenses and was sentenced to six years imprisonment in unrelated state proceedings. Actually Marlowe was convicted of five offenses. The discrepancy in the number of offenses, however, is immaterial. They were all similar, and the affidavit accurately reported his punishment. The affidavit fully disclosed that Marlowe was detected acquiring government information and selling it to contractors. Confronted with proof of his activities, he consented to provide information about bribery in the Department of Defense. The government paid Marlowe and his wife, but the payments were not mentioned in the affidavit. Their omission, though having some bearing on Marlowe's credibility, was not fatal to the showing of probable cause. Most of the information Marlowe provided did not depend on his credibility but, rather, on consensually recorded conversations that incriminated Muldoon.

We find no error in the district court's denial of Muldoon's motion to suppress the evidence obtained by wiretaps of his phone.

### III

■ Muldoon assigns error to the district court's omission of three questions during the voir dire examination of the jury. He requested the court to inquire (1) whether any members of the panel would give a government witness more credence than a defense witness; (2) whether anyone would give greater weight to the testimony of a government investigator simply because of his position; and (3) whether any member of the panel or their close relatives worked for the FBI, IRS, United States Attorney, Commonwealth's Attorney, or any other investigative agency. Muldoon relies on *United States v. Baldwin,* 607 F.2d 1295, 1297–98 (9th Cir.1979), and similar cases. In *Baldwin* the court reversed a conviction that depended on the testimony of government agents because the court refused to ask whether any prospective juror would be unduly influenced by the testimony of a law enforcement officer.

A trial court has wide latitude in conducting voir dire. The court abuses its discretion only "where the court's restriction hinders a defendant's opportunity to make reasonable use of his challenges." *King v. Jones,* 824 F.2d 324, 326 (4th Cir.1987). Whether the exclusion of questions sought by a defendant gives rise to reversible error must be considered in the context of the entire case and the other inquiries the trial court made during voir dire. *United States v. Gore,* 435 F.2d 1110, 1113 (4th Cir.1970). Tested by these precepts, the court's conduct of the voir dire presents no reversible error.

■ Because Muldoon called no witnesses and declined to testify, there could be no comparison of defense and government witnesses. Refusal to grant Muldoon's first request was not error.

■ *Baldwin,* on which Muldoon relies, lays down no *per se* rule of reversal for failure to ask about bias in favor of the credibility of police because of their position. Among the factors it considers in determining whether error was committed is the importance of the government agent's testimony in relation to the whole case. *Accord United States v. Gore,* 435 F.2d at 1113. The prosecution of Muldoon did not depend on the credibility of government agents. Intercepted conversations of

Muldoon and his coconspirators and the testimony of coconspirators convicted him. Much of this evidence was secured by wiretaps and the tapes Marlowe made when he talked to the recipient of Muldoon's bribes. The failure of the district court to inquire whether the jury would be unduly influenced by the government agents is not error in light of the entire record.

■ The trial judge mistakenly thought that he had complied with Muldoon's request to ask about the employment of prospective jurors and their families by government investigative and prosecuting agencies. Review of the transcript of the voir dire discloses, however, that his inquiry, although extensive, did not refer to all of the agencies Muldoon specified. Nevertheless, Muldoon was afforded ample evidence about the jury panel. The juror information cards disclosed the jurors' employment and that of their spouses. In response to the court's questions, numerous members of the panel stated that they or their relatives were employed or had been employed by government agencies or served in the military. Others responded that they were employed by defense contractors, and on Muldoon's request the court asked them to name their employers. One prospective juror, a lawyer, stated that he had represented clients in opposition to the Justice Department. Another said his wife prosecuted fraud cases. The court asked about employment at any time with the Department of Defense and the Marine Corps, which were the agencies concerned with Muldoon's activities. One man responded that he was familiar with a Marine Corps project that the prosecutor identified as attracting Muldoon's interest. Others told of their own employment or their spouse's with these agencies. In addition, the court asked the usual questions about knowledge of the case, acquaintance with counsel, and bias or prejudice. The juror information cards and the court's inquiries disclosed material facts about the jurors' backgrounds. We conclude that the voir dire did not hinder Muldoon's "opportunity to make reasonable use of his challenges." See *King v. Jones,* 824 F.2d at 346.

IV

Muldoon assigns error to the district court's denial of his motion for a judgment of acquittal of bribery. He concedes the evidence is sufficient to convict him of the lesser included offense of giving an illegal gratuity. The factual predicate for his motion is an intercepted conversation with an LTC executive in which Muldoon complains that the government employee, Sherman, is not doing anything for the money he received. The legal predicate for his claim is that an essential element of bribery is the accused's knowledge that the recipient of the bribe has been paid to do a specific act in violation of his duties; or as Muldoon puts it, to provide some *quid pro quo.*

■ The distinction between a bribe and an illegal gratuity is the difference in the intent of the person who gives the bribe. *Compare* 18 U.S.C. § 201(b) (bribery) *with* § 201(c) (gratuity). The distinction is slight, but it is apparent from the text of the statute. Proof of bribery requires a corrupt intent that is not required to show an illegal gratuity. Bribery requires proof that the payor acted corruptly with the intent of influencing any official act, influencing a public official to defraud the government, or to do or omit an act in violation of his official duties. § 201(b)(1)(A–C). The evidence must establish that the payor intended to receive some benefit in return for the payments. In contrast, an illegal gratuity is a payment made for an act by the recipient that might have been done without any payment. The proof need not show that the payor intended to exact action by the recipient, although it must show that the payor gave the gratuity because of the act. *See United States v. Arthur,* 544 F.2d 730, 733–36 (4th Cir.1976); *United States v. Brewster,* 506 F.2d 62, 72 (D.C.Cir.1974). Payment of an illegal gratuity is a lesser included offense of bribery within the meaning of Fed.R.Crim.P. 31(c).

■ The difficulty with Muldoon's motion for judgment of acquittal lies not in his legal predicate but in his factual analysis of the record. In the same intercepted

conversation on which Muldoon relies, the LTC executive explained that the company would make payments to Muldoon who was to pay Sherman to do specific tasks for the company. Muldoon subsequently transmitted the bribe to Sherman. Moreover, Sherman and an executive of LTC, who both pleaded guilty to conspiring with Muldoon, implicated Muldoon in the bribery and conspiracy to bribe Sherman. The prosecution presented ample evidence of Muldoon's corrupt intent, and the district court properly denied his motion for a judgment of acquittal.

V

 The district court instructed the jury that the counts in the indictment alleging bribery also charged the lesser included offense of paying an illegal gratuity. The court read the bribery statute and explained the elements of bribery. It also read the illegal gratuity statute, but it did not explain the elements of this crime. Muldoon assigns error to the district court's failure to explain the elements of an illegal gratuity. In a closely related assignment, he complains about the court's refusal to give his tendered instructions that stated the elements of illegal gratuity and distinguished that crime from bribery.

Ordinarily a district court's instructions must include an explanation of the elements of a crime, and a reviewing court will not substitute counsel's closing argument for an omission of this explanation. *United States v. Polowichak*, 783 F.2d 410, 415–17 (4th Cir.1986). But the court's omission to explain in greater detail the elements of an illegal gratuity in this case is not reversible error. In his closing argument, Muldoon's counsel asked the jury to find his client guilty of the lesser included offense of paying a gratuity. The jury found Muldoon guilty of bribery, for which the instructions were correct and complete. In accordance with his counsel's request, it also found him guilty of paying a gratuity. The district court merged the offenses for sentencing.

VI

The district court sentenced Muldoon to 27 months imprisonment, 36 months supervised release, and a fine of $10,000. The court calculated the term of imprisonment according to the United States Sentencing Guidelines as follows: level 10 for bribery, 2C1.1(a); an increase of two levels for more than one bribe, 2C1.1(b)(1); an increase of five levels because the value of the bribe was $65,000; 2C1.1(b)(2)(A) and 2F1.1(b)(1)(F); an increase of three levels for a role in the offense, 3B1.1(b); and a decrease of two levels for acceptance of responsibility. The base as adjusted resulted in an offense level of 18, that, in the absence of prior convictions, called for a sentence ranging from 27 to 33 months. The court sentenced at the low end of the range in part because of the sentences given to others involved in related prosecutions.

Muldoon complains because the district court did not sentence him in accordance with a proposed plea agreement. He was willing to plead guilty to one bribery count, interstate travel to carry on bribery, and a conspiracy charging fraud and theft of government property. He attached to the proposal a condition permitting him to appeal the denial of his motion to exclude the wiretaps. The government was unwilling to accept this condition, but it agreed with other provisions of the proposal.

 A court is not required to accept a conditional plea. *See United States v. Davis*, 900 F.2d 1524, 1527 (10th Cir.1990); Fed.R.Crim.P. 11(a)(2). Consequently, a court is not required to give effect at sentencing to a proposed conditional plea to which the government has not consented. The court properly rejected Muldoon's request that he be sentenced in accordance with the proposed plea agreement.

There is no merit to Muldoon's objection to the court's addition of a three level increase for his aggravating role in the offense as a manager or supervisor pursuant to 3B1.1. Findings of aggravating circumstances are factual and are therefore reviewed only for clearly erroneous errors. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). The district court had

ample evidence to support its finding that Muldoon was a manager. He was more than a mere conduit of the bribes. He negotiated with Sherman over terms of payment and sent LTC false invoices for consulting services to enable the company to conceal its corruption.

Both the government and Muldoon question the district court's finding on the amount of bribes paid by Muldoon. Muldoon argues that the amount should be reduced, to $5,000, because Sherman initially told FBI investigators that he received only $5,000 from Muldoon. The district court disbelieved this self-serving statement in favor of later evidence that Muldoon transmitted $65,000 in bribes to Sherman. The government argues that $188,000, the amount LTC paid Muldoon, is the proper measure.

■ The guidelines provided that the offense level is to be adjusted by considering the greater of "the value of the bribe or the benefit received, or to be received, in return for the bribe." 2C1.1(b)(2)(A). The commentary dictates that the value of the benefit received in return for the bribe is the "net value of such benefit. For example, if a $150,000 contract on which $20,000 profit was made was awarded in return for a bribe, the value of the benefit received in return is $20,000." 2C1.1, comment. (n. 2). Because the evidence does not disclose the profit LTC made on contracts for which it paid bribes, the court correctly measured the value of the bribe by the amount Sherman received.

■ In its cross-appeal the government also assigns error to the district court's two-level decrease for acceptance of responsibility. It argues that by denying guilt of bribery and admitting only guilt of giving illegal gratuities, Muldoon has not accepted responsibility for his criminal conduct. The government relies primarily on *United States v. Gordon*, 895 F.2d 932, 935–36 (4th Cir.1990), in which the defendant was denied an adjustment when at sentencing he admitted the lesser included offense of possession of a drug but denied the greater offense of possession with intent to distribute. The government claims that *Gordon* is directly on point and requires reversal.

Section 3E1.1(a) allows a two-level decrease of the offense level "if the defendant clearly demonstrates a recognition and affirmative responsibility for his criminal conduct." The guidelines also provide that a defendant may be given consideration for this downward adjustment even though his conviction is based on a finding of guilt by a jury. 3E1.1(b). The commentary to these provisions justifies the district court's adjustment. It provides in part:

> In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pretrial statements and conduct.

3E1.1, comment. (n. 2). Muldoon's acceptance of responsibility can be said to fit within this "rare situation." In his aborted plea agreement, Muldoon offered to plead guilty to the greater offense of bribery, reserving an appeal to make a constitutional and statutory challenge to the wiretaps. When the government rejected this condition, Muldoon was confronted with the choice of trial on a plea of not guilty or relinquishment of a constitutional and statutory claim. At trial he did not testify or introduce any evidence. He was content to let his counsel argue that the government's proof showed only illegal gratuities. It is Muldoon's pretrial offer to plead guilty to the greater offense of bribery that distinguishes his situation from Gordon's.

We have considered Muldoon's other arguments and find no error requiring reversal.

AFFIRMED.