**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4763

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH DODD, a/k/a K,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (2:12-cr-00020-FL-3)

Argued: September 19, 2014          Decided: October 29, 2014

Before WILKINSON, DUNCAN, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Keenan joined.

**ARGUED:** Joshua Brian Howard, GAMMON, HOWARD, ZESZOTARSKI, PLLC, Raleigh, North Carolina, for Appellant. Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DUNCAN, Circuit Judge:

Appellant, Kenneth Dodd, pleaded guilty to bribing a private correctional officer and to conspiracy. At sentencing, the district court applied a four-level enhancement after finding that "the offense involved . . . [a] public official in a . . . sensitive position." U.S.S.G. § 2C1.1(b)(3).[1] Dodd challenges the propriety of this enhancement on appeal. For the reasons that follow, we affirm.

I.

Rivers Correctional Institution ("Rivers CI") is a private, low-security facility that contracts with the Federal Bureau of Prisons to house federal inmates. In May 2011, Rivers CI staff discovered various prohibited items in an inmate's cell. This discovery prompted an investigation by the U.S. Department of Justice Office of the Inspector General, which uncovered the conspiracy at issue here.

Beginning, apparently, in early 2011, Rivers CI inmate Dodd paid two Rivers CI correctional officers thousands of dollars to smuggle cellular telephones and tobacco products--both prohibited items--into Rivers CI. According to one of the officers, the two circumvented the institution's security by

_____

[1] Citations to the U.S. Sentencing Guidelines Manual refer to the November 2012 edition unless otherwise noted.

1

concealing the contraband in food containers and gloves. Dodd profited from this arrangement by reselling the telephones and tobacco products to other inmates.

On October 3, 2012, a federal grand jury charged Dodd with bribing one of the correctional officers, in violation of 18 U.S.C. § 201(b)(1)(C), and conspiracy, in violation of 18 U.S.C. § 371. Dodd pleaded guilty to both counts on April 16, 2013.

Prior to sentencing, a U.S. probation officer prepared a draft presentence investigation report determining that the Guidelines sentencing range for Dodd was 37 to 46 months, based on a total offense level of 17 and a criminal history category of IV. This calculation included a four-level enhancement under U.S.S.G. § 2C1.1(b)(3), which applies when "the offense involved an elected public official or any public official in a high-level decision-making or sensitive position."

In August 2013, Dodd objected in writing to the application of U.S.S.G. § 2C1.1(b)(3). He did not dispute--and does not dispute on appeal--that the correctional officers he bribed were public officials within the meaning of U.S.S.G. § 2C1.1(b)(3).[2]

---

[2] The commentary accompanying this guideline states that the phrase "public official" is "construed broadly," U.S.S.G. § 2C1.1 cmt. n.1, and incorporates the definition of that term in 18 U.S.C. § 201(a)(1), see U.S.S.G. § 2C1.1 cmt. n.1(A). Section 201(a)(1) defines "public official" to include "an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government (Continued)

Rather, he argued that these officers did not occupy a high-level decision-making or sensitive position. The probation officer subsequently submitted the final presentence investigation report, which still included the four-level enhancement. The probation officer recommended that the district court find that correctional officers occupy a sensitive position because they "have substantial authority, influence, and control over inmates and are responsible for the overall management, safety, and security of a given facility." J.A. 83.

The district court sentenced Dodd on October 3, 2013. At the hearing, Dodd renewed his objection to the four-level enhancement. The district court overruled the objection, finding that a private correctional officer occupies a sensitive position because he or she "has the authority and the ability to directly and significantly influence inmates' lives and the entire facility's safety with the decisions he or she makes."

thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government." 18 U.S.C. § 201(a)(1) (emphasis added); cf. United States v. Thomas, 240 F.3d 445, 446, 448 (5th Cir. 2001) (holding that "a guard employed by a private entity operating a detention center under contract with the Immigration & Naturalization Service . . . was a 'public official', as defined by § 201(a)(1)," because, among other reasons, "he acted on behalf of the United States under the authority of a federal agency which had contracted with his employer").

3

J.A. 51. The district court determined that the applicable Guidelines sentencing range was 37 to 46 months, and sentenced Dodd to 37 months' imprisonment. Without the enhancement, the range would have been 24 to 30 months. This appeal followed.

II.

We review criminal sentences for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007). Improper calculation of the Guidelines range is an abuse of discretion. See id. In such a situation, the resulting sentence is "procedurally unreasonable and subject to being vacated." United States v. McManus, 734 F.3d 315, 318 (4th Cir. 2013) (quoting United States v. Hargrove, 701 F.3d 156, 161 (4th Cir. 2012)) (internal quotation mark omitted).

We determine whether a district court's Guidelines calculation was proper by reviewing that court's "factual findings for clear error and its legal conclusions de novo." United States v. Bartko, 728 F.3d 327, 345 (4th Cir. 2013) (quoting United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006)) (internal quotation mark omitted). "Where a Guidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the circumstances at issue." United States v. Adepoju, 756 F.3d 250, 256 (4th Cir. 2014). If the application turns on a question of fact, the

4

clear error standard applies; if it turns on a legal interpretation, de novo review is appropriate. <u>See</u> <u>United States v. Steffen</u>, 741 F.3d 411, 414 (4th Cir. 2013).

This appeal presents a question of Guidelines interpretation: whether private correctional officers occupy a "high-level decision-making or sensitive position." U.S.S.G. § 2C1.1(b)(3). We review de novo the district court's resolution of this question of law.[3] <u>Cf.</u> <u>United States v. Snell</u>, 152 F.3d 345, 346 (5th Cir. 1998) (citing <u>United States v. Stephenson</u>, 895 F.2d 867, 877 (2d Cir. 1990)) ("The question whether a juror is an official holding a high-level decision-making or sensitive position, because it depends primarily upon interpretation of the sentencing guidelines, is a question of law that we review de novo.").

III.

Dodd argues on appeal that his sentence is procedurally unreasonable because the correctional officers he bribed were

_____

[3] We do not hold that all applications of U.S.S.G. § 2C1.1(b)(3) are subject to de novo review. Indeed, clear error review is appropriate where application of this guideline "turns primarily on fact." <u>United States v. ReBrook</u>, 58 F.3d 961, 969 (4th Cir. 1995) (applying a predecessor to U.S.S.G. § 2C1.1(b)(3)); <u>accord</u> <u>United States v. Matzkin</u>, 14 F.3d 1014, 1021 (4th Cir. 1994) (same). A district court's application turns primarily on fact where, unlike here, it "depend[s] on an evaluation and weighing of the factual details." <u>United States v. McVey</u>, 752 F.3d 606, 610 (4th Cir. 2014).

neither "high-level decision-makers nor were they in the kind of sensitive position the Sentencing Commission described as subject to the enhancement." Appellant's Br. at 5–6. The government responds that Dodd's sentence is proper because "the prison guards in question occupied a 'sensitive position[]' for the purposes of USSG §2C1.1(b)(3)." Appellee's Br. at 16.

This court has not yet decided whether private correctional officers acting under the authority of the Federal Bureau of Prisons hold a sensitive position for the purposes of U.S.S.G. § 2C1.1(b)(3). Like the district court, we answer this question on a nearly blank slate. We begin with a discussion of the Guidelines and relevant precedent, then turn to Dodd's arguments, and finally explain why we conclude that private correctional officers do hold a sensitive position for the purposes of the enhancement.

A.

Our analysis starts with the text of U.S.S.G. § 2C1.1(b)(3), which provides, in relevant part, "If the offense involved . . . any public official in a high-level decision-making or sensitive position, increase by 4 levels." U.S.S.G. § 2C1.1(b)(3). The accompanying commentary[4] defines a "[h]igh-

---

[4] The Guidelines commentary is "authoritative and binding, 'unless it violates the Constitution or a federal statute, or is inconsistent with, or [a] plainly erroneous reading of' the (Continued)

6

level decision-making or sensitive position" as one that is "characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process." Id. § 2C1.1 cmt. n.4(A). The commentary then gives separate examples of a "public official in a high-level decision-making position" and "a public official who holds a sensitive position." Id. § 2C1.1 cmt. n.4(B). Officials in a sensitive position "include a juror, a law enforcement officer, an election official, and any other similarly situated individual."[5] Id.

We turn next to relevant precedent. This court has discussed in two published opinions whether an official held a sensitive position under the Guidelines. In United States v.

---

Guideline itself." United States v. Peterson, 629 F.3d 432, 435 (4th Cir. 2011) (quoting Stinson v. United States, 508 U.S. 36, 38 (1993)).

[5] The history of the commentary establishes that law enforcement officers occupy a sensitive position even if they lack supervisory authority. Effective November 1, 2004, the Sentencing Commission amended the commentary to "clarify the meaning of 'high-level decision-making or sensitive position.'" U.S.S.G. app. C, amend. 666. Prior to that date, the commentary listed "supervisory law enforcement officers" as an example of officials "holding a high-level decision-making or sensitive position." U.S.S.G. § 2C1.1 cmt. n.1 (2003). The revised commentary lists "a law enforcement officer"--not a supervisory law enforcement officer--as an example of an official in a "sensitive position." U.S.S.G. § 2C1.1 cmt. n.4(B).

7

ReBrook, we affirmed the district court's determination that an attorney for the West Virginia Lottery Commission held a sensitive position because of "the nature of the advice [the attorney] gave to the Director of the Lottery Commission, the influence that [the attorney] had with other Lottery Commission members[,] . . . and the fact that [the attorney] was privy to confidential information."  58 F.3d 961, 970 (4th Cir. 1995). And in United States v. Matzkin, we upheld the district court's finding that a United States Navy "supervisory engineer and branch head with responsibility for the technical aspects of major procurements" held a sensitive position because he "was involved in decision making on multi-million dollar Navy contracts and had considerable discretion and influence in these matters."  14 F.3d 1014, 1016, 1021 (4th Cir. 1994).  Although instructive in providing a frame of reference, these cases do not dictate the outcome of this appeal because the public officials discussed therein held positions markedly different from that of a private correctional officer.  In neither Matzkin nor ReBrook did we establish parameters for determining whether a given position is sensitive.[6]

---

[6] Dodd also cites United States v. Alter, in which an out-of-circuit district court found that a director of a halfway house was not a "'high-level' government official" because his position "placed him at a low level in the Bureau of Prisons hierarchy" and he "lacked the legal authority to impose major (Continued)

Only one circuit has considered, in three unpublished opinions, whether correctional officers hold a sensitive position. See United States v. Chairez, 423 F. App'x 361 (5th Cir. 2011) (per curiam); United States v. McCowan, 464 F. App'x 213 (5th Cir. 2010) (per curiam); United States v. Guzman, 383 F. App'x 493 (5th Cir. 2010) (per curiam). The Fifth Circuit held that correctional officers occupy a sensitive position because they "'ha[ve] the authority and the ability to directly and significantly influence inmates' lives and the entire facility's safety with the decisions [they] make[].'" Chairez, 423 F. App'x at 362 (quoting Guzman, 383 F. App'x at 494). These cases define a sensitive position as "one that has power to affect the integrity and workings of the judicial and law enforcement system." Guzman, 383 F. App'x at 494.

---

disciplinary sanctions without referring the discipline cases to his superiors." 788 F. Supp. 756, 767 (S.D.N.Y. 1992), rev'd on other grounds, 985 F.2d 105 (2d Cir. 1993). This case lends no support to Dodd's position because, among other reasons, the district court applied a materially outdated version of the Guidelines. The Guidelines then in effect did not make clear that the enhancement applied to officials in a sensitive position regardless of whether that position was also high-level. See supra note 5. The outdated Guidelines played a central role in the Alter Court's opinion: it held that the halfway house director was not "a 'high-level' government official" even though he "possessed a sensitive position, some degree of discretion, and de facto authority." 788 F. Supp. at 767 (emphasis added).

B.

Dodd makes four arguments in support of his contention that the private correctional officers he bribed did not occupy a sensitive position.  We consider each in turn.

First, Dodd maintains that the officers did not make "any governmental decision" or wield "any influence, much less substantial influence, over any government agency decision." Appellant's Br. at 8–9; cf. U.S.S.G. § 2C1.1 cmt. n.4(A) ("'High-level decision-making or sensitive position' means a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process.").  To the contrary, however, the correctional officers operated under a contract with the Federal Bureau of Prisons, a government agency.  This arrangement empowered the officers to make decisions "on behalf of" the Bureau of Prisons.  U.S.S.G. § 2C1.1 cmt. n.4(A).  Dodd's bribes caused the officers to wield their authority in at least two improper ways: they used their position to circumvent Rivers CI security, and they ignored their duty to enforce the institution's regulations.

Second, Dodd claims that the enhancement should not apply to his offense because he did not intend for his bribes to influence official acts.  Appellant's Br. at 11–12; cf. U.S.S.G.

10

§ 2C1.1 cmt. background ("Under § 2C1.1(b)(3), if the payment was for the purpose of influencing an official act by certain officials, the offense level is increased by 4 levels."). He maintains that the correctional officers performed no official act because "prison guards delivering contraband to prisoners are operating outside their official capacity and in derogation of their role." Appellant's Br. at 11. But any public official acting pursuant to a bribe is acting contrary to his or her role. Dodd bribed the officers to use their position to undermine Rivers CI security.

Third, Dodd argues that private correctional officers are not similarly situated to jurors, law enforcement officers, or election officials--the examples in the Guidelines commentary of public officials in a sensitive position--because private correctional officers do not take an oath, are not publicly employed, do not determine guilt or innocence, and cannot arrest members of the public at large. Appellant's Br. at 9-11; see also Reply Br. at 2-3 ("Dodd simply submits that people who swear to God to defend the United State[s] Constitution are materially different than those that do not."). We agree that private correctional officers are not identically situated to any of the listed examples. But that is not the standard; the commentary indicates that officials in a sensitive position "include" officials who are "similarly situated" to the

11

examples.  U.S.S.G. § 2C1.1 cmt. n.4(B).  And we find that private correctional officers and law enforcement officers are similarly situated.  The men and women who occupy these positions wield the coercive power of the state to maintain order and safety among the populations they protect.  They are responsible for enforcing the rules.  When a person bribes these officers to do some act in contravention of their duties, that person is paying the officers to violate not only the law, but also the public trust placed in them.  Such bribery undermines the integrity and effectiveness of our criminal justice system.

Fourth, Dodd maintains that the enhancement has "no conceivable outer limits" if it covers private correctional officers.  Appellant's Br. at 14–15.  We disagree.  These officers are responsible for maintaining safety and security among a captive, potentially dangerous population.  And they play an integral role in ensuring that the justice system operates effectively.  These factors distinguish private correctional officers from most public officials.

C.

We hold that private correctional officers acting under the authority of the Federal Bureau of Prisons occupy a sensitive position for the purposes of U.S.S.G. § 2C1.1(b)(3).  Two considerations, taken together, compel this conclusion.  First, private correctional officers occupy a position of trust in

12

institutions that are both "inherently dangerous," <u>Lewis v. Casey</u>, 518 U.S. 343, 391 (1996), and critical to the functioning of our justice system.  As the district court accurately noted, one need not "linger long when thinking about the sensitive nature of guarding in a prison setting and the importance of that position."  J.A. 51.  When correctional officers accept bribes to bring contraband to prisoners, they endanger those inside and outside of the prison.  Contraband cellular telephones, for example, "can be used by inmates to orchestrate criminal activity, plan escapes, and be a menace outside of prison walls."  <u>Lawmakers Push to Criminalize Prison Cell Phone Smuggling as Problem Spreads</u>, Cal. Dep't Corr. & Rehab. (Apr. 14, 2009), http://www.cdcr.ca.gov/News/Press_Release_Archive/2009_Press_Releases/April_14.html (saved as ECF opinion attachment) (quoting Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation).  Second, private correctional officers are "similarly situated" to "a law enforcement officer."  U.S.S.G. § 2C1.1 cmt. n.4(B).

We conclude that the correctional officers Dodd bribed occupied a sensitive position within the meaning of U.S.S.G. § 2C1.1(b)(3).  Accordingly, the district court did not abuse its discretion by applying this enhancement to Dodd at sentencing.

13

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.