**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4652**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DAVID ALAN CHEATWOOD,

Defendant – Appellant.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Elizabeth K. Dillon, Chief District Judge.  (7:21-cr-00026-EKD-1)

---

Argued:  October 29, 2024                      Decided:  January 2, 2025

---

Before GREGORY and HARRIS, Circuit Judges, and Louise W. FLANAGAN, United States District Judge for the Eastern District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:**  Benjamin Mark Schiffelbein, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Washington, D.C., for Appellant.  Laura Taylor, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.   Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM.

In this criminal appeal, defendant David Cheatwood ("Cheatwood") challenges the district court's denial of a two-level reduction in offense level for acceptance of responsibility. Finding no clear error in the district court's determination that Cheatwood did not clearly demonstrate acceptance of responsibility, we affirm.

I.

Indictment filed August 12, 2021, charged Cheatwood with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Cheatwood moved to suppress evidence obtained from him upon a search of his vehicle, on two grounds: 1) police officers did not have reasonable suspicion to seize him, and 2) they did not have probable cause to search his vehicle. The government responded in opposition, relying upon police incident and dispatch reports, as well as a dash cam video at the scene of the arrest.

The district court denied Cheatwood's motion to suppress, without an evidentiary hearing, in a memorandum opinion and order entered April 5, 2022. In particular, the district court reasoned: "Because the motion merely supposes and speculates and the record contains lawful bases for both Cheatwood's seizure on an outstanding felony warrant for manufacturing methamphetamine and the search of the vehicle he was driving, the court does not find that a hearing is necessary." J.A. 50.[1] That same date, the district court set a jury trial to take place August 3, 2022.

---

[1] Citations to "J.A." refer to the Joint Appendix filed by the parties in this appeal.

The government filed June 24, 2022, a notice of intent to introduce expert testimony of special agent Nicholas Davis ("Davis") of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives as to the interstate nexus of the firearm charged in the indictment. Over two weeks later, for reasons not specified in the district court record, the court re-noticed the trial as a bench trial,[2] and noticed a pretrial conference to take place July 26, 2022. Minutes of that pretrial conference state that the court "ask[ed] counsel to file a motion to waive jury trial," and gave remarks regarding the "conduct of trial." Case No. 7:21-cr-00026-EKD (W.D. Va.) Document 39 at 1. The day before the scheduled bench trial, the government filed a sealed bench memorandum and Cheatwood filed a waiver of right to jury trial.

Bench trial commenced August 3, 2022, at 8:58 a.m. and concluded at 12:15 p.m. on the same date. J.A. 58-170. The government gave an opening statement wherein it outlined what it "expect[ed] its evidence will show," and it noted the parties "stipulated that Mr. Cheatwood was a convicted felon," and "he knew he was a felon." J.A. 64. Cheatwood's opening statement consisted of the following:

> The evidence in this case will likely show what the government proffered it to show. We are here simply because a conditional plea was not offered and Mr. Cheatwood is preserving his appellate rights.

*Id.* In the course of the bench trial, the government introduced seven exhibits into evidence and called six witnesses to testify.

---

[2] In his reply brief, Cheatwood asserts that, at an unspecified time, he "asked the court to schedule a bench trial." Reply Br. at 1.

3

In particular, a police dispatch supervisor testified that police officer Ryan Finney ("Finney") called dispatch July 13, 2020, inquiring about Cheatwood and received confirmation that there was an active warrant for his arrest. Finney testified to driving an unmarked vehicle on that date, recognizing Cheatwood in a passing vehicle based on several prior contacts, confirming through dispatch that he had an active warrant, and requesting a traffic stop by patrol officers. He also described the arrival of other officers, arrest of Cheatwood on the outstanding warrant, and the search of his vehicle, in which they found the firearm that produced the instant offense. Officer Laura Reinhard ("Reinhard") testified about seeing a passenger in the vehicle "loading a syringe" as she approached the vehicle prior to arrest. J.A. 109. She and officer Jason O'Brien ("O'Brien") provided further details about the search of the vehicle. Detective John Musser testified about a statement Cheatwood made March 5, 2021, in which Cheatwood admitted purchasing the firearm on the same day as his arrest. Finally, special agent Davis testified as to the interstate commerce nexus of the firearm.[3]

Cheatwood raised multiple objections to the admissibility of the government's exhibits and to the hearsay nature of some of the testimony. Cheatwood also cross-examined each of the government's witnesses. The government read into evidence the parties' two stipulations, that Cheatwood was a felon and he knew he was a felon, on July 13, 2020.

---

[3]     The testimony of Davis is not in the joint appendix, but rather in a separate transcript filed in the district court docket. *See* Case No. 7:21-CR-0026-EKD (W.D. Va.) Document 53.

4

At the close of the government's case, Cheatwood renewed his motion to suppress "based on the evidence that was offered at trial." J.A. 152. In support of his motion, Cheatwood reiterated his request to "suppress the evidence found as a result of the search of the vehicle, which include[d] the firearm that is involved in this case." J.A. 156. The court denied the renewed motion to suppress, and heard closing arguments.

In its closing, the government noted the two stipulated elements, and the remaining two elements "for the Court, as the trier of fact in this case, to consider," as follows: First, did Cheatwood "knowingly possess a firearm on July 13th of 2020, and, second, had this firearm at some point previously been transported across state lines." J.A. 162. Cheatwood, in closing, conceded there was no "dispute that he had possession of a firearm at the time." J.A. 164. However, he argued that under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 11 (2022), his felon status is a constitutionally impermissible basis for conviction, and that the interstate commerce element had not been satisfied because of an absence of evidence that Cheatwood's possession "had any effect on interstate commerce." J.A. 164. The court then stated its findings, beyond a reasonable doubt, that each of the four elements of the offense had been satisfied. The court thus adjudicated Cheatwood guilty of the charged offense, and it set sentencing to take place November 3, 2022.

Prior to sentencing, the probation office prepared a presentence investigation report ("PSR") with the following calculations: total offense level 18, criminal history VI, and guidelines range 57-71 months. Regarding acceptance of responsibility, the PSR determined: "As of completion of the presentence investigation, the defendant has not

5

clearly demonstrated acceptance of responsibility for the offense." J.A. 219 (citing U.S.S.G. § 3E1.1). Further, it noted:

> The defendant provided the following written statement to the probation officer wherein admitting involvement in the offense: 'I admit to possessing a firearm after I was convicted of a felony. I knew that I was convicted of a felony when I did so. I admitted to police that I possessed the firearm for self-defense when asked, and I went to trial solely to preserve legal issues for appeal. I have not and do not deny that I knowingly possessed a firearm.

*Id.* Nonetheless, the PSR determined that Cheatwood "does not meet criteria to receive credit for acceptance of responsibility." *Id.* (citing U.S.S.G. § 3E1.1 cmt. n.2).

Neither party lodged written objections to the PSR. However, the parties filed sentencing memoranda, and Cheatwood filed exhibits, including a character letter and his own drawings. At the start of sentencing, Cheatwood noted orally that he wished to add an objection to not receiving a two-point reduction for acceptance of responsibility. He argued that under Application Note 2 to U.S.S.G. § 3E1.1, "a conviction by trial does not automatically preclude the defendant from consideration for such a reduction" because in "rare circumstances, the defendant may clearly demonstrate acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." J.A. 175.

> The district court overruled the objection, reasoning as follows:
>
> I note that applying such a reduction in this situation would have to fall within one of those rare situations. And as the note and case law notes that when you have denial of an essential factual element of guilt, that is not one of those rare situations. And I note that the Fourth Circuit case law is consistent with this. And I'll call everyone's attention to a case by Judge Payne in the Eastern District, United States versus Jones, which is a 2006 case, 431 F. Supp. 2d 594, which was affirmed by the Fourth Circuit Court of Appeals. And I note in that case the defendant challenged the constitutionality of a search not pursuant to a search warrant that yielded the essential evidence of

6

his guilt, and the court found that that was a challenge to factual guilt. And the government presented testimony at the hearing on the motion to suppress, and the Court noted in that case the government was not saved much of the burden and expense of trial because between the motion to suppress hearing and the trial, the government had to present the evidence.

There was an argument made that the court was actually requiring the defendant to forego his constitutional rights, and as the court said, no, the defendant is simply put to an election of choices.

And so the Court finds that Mr. Cheatwood has not met his burden to apply the acceptance of responsibility reduction of two levels and will not apply it in this case.

J.A. 180-181. After overruling the objection, the court noted the advisory guideline range was 57-71 months, and it heard from the parties regarding sentencing factors under 18 U.S.C. § 3553. The government argued in favor of a sentence of 57 months, and Cheatwood argued in favor of a downward variance to 37 months. The court then explained its decision to impose a downward variance to 50 months. The court entered judgment sentencing Cheatwood to that term of imprisonment November 14, 2022, and the instant appeal followed.

## II.

As an initial matter, Cheatwood contends we should review the district court's application of the acceptance of responsibility guideline de novo. The government responds that the district court's decision on acceptance of responsibility is subject to clear error review.

"The resolution of the parties' difference on the standard of review depends on whether the issue turns primarily on a factual determination, in which case we should review the district court's findings for clear error or whether it turns primarily on the legal

interpretation of a guideline term, in which case our review moves closer to de novo review." *United States v. McVey*, 752 F.3d 606, 610 (4th Cir. 2014).[4]  "Where a [g]uidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the circumstances at issue." *United States v. Dodd*, 770 F.3d 306, 309 (4th Cir. 2014).

Cheatwood's contention that a de novo standard of review applies is not correct. Here, the district court's decision turned on both an interpretation of the guidelines and "an evaluation and weighing of the factual details" of Cheatwood's conduct and statements. *McVey*, 752 F.3d at 610; *see* J.A. 180-181.  Concerning "the nature of the circumstances at issue" on appeal, *Dodd*, 770 F.3d at 309, the acceptance of responsibility guideline itself contains the following two components that require a clear error standard of review.

First, the guideline provides for a two-level reduction of the offense level only "[i]f the defendant *clearly* demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (emphasis added).[5]  Second, the guideline commentary provides that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *Id.* cmt. n.5.  "For this reason, the determination of the sentencing judge is entitled to *great deference* on review." *Id.*  As such, we have recognized a "sentencing

---

[4]     Internal quotation marks and citations are omitted from all case citations in this opinion, unless otherwise specified.

[5]     All citations to the United States Sentencing Guidelines ("U.S.S.G.") correspond to the United States Sentencing Commission Guidelines Manual "in effect on the date that the defendant [was] sentenced," U.S.S.G. § 1B1.11(a), here the 2021 Guidelines Manual.

court's decision on whether to grant a reduction for acceptance of responsibility is a factual determination that we will not disturb on appeal unless it is clearly erroneous." *United States v. Dickerson*, 114 F.3d 464, 469 (4th Cir. 1997). "We review a district court's decision concerning an acceptance-of-responsibility adjustment for clear error." *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007).

Cheatwood cites *United States v. Braxton*, 903 F.2d 292 (4th Cir. 1990), in support of a de novo standard of review. There, however, the district court "understood the law to require that acceptance of responsibility be a step toward rehabilitation and that the purpose of the reduction had rehabilitation as a goal." *Id.* at 296. We noted "[n]owhere in § 3E1.1, or in the application notes or background commentary, is the word 'rehabilitation' mentioned." *Id.* Thus, we held, "the sentencing judge erred when he denied the reduction as a matter of law because [the defendant] could not prove that he was taking steps toward rehabilitation." *Id.* In the instant case, by contrast, the district court did not rely upon a factor not mentioned in the guideline; in fact, the district court relied upon a pivotal factor discussed in detail in the commentary: "Conviction by trial." U.S.S.G. § 3E1.1 cmt. n.2. Thus *Braxton* does not require application of de novo review here.[6]

In sum, we apply a clear error standard of review.

---

[6]     *Braxton* also involved application of an earlier version of the guideline that included commentary stating that the district court's determination "should not be disturbed unless it is without foundation," 903 F.2d at 295, which phrase is not in the 2021 commentary or current commentary. Further, a second case cited by Cheatwood, *United States v. White*, 875 F.2d 427 (4th Cir. 1989), does not support his argument because it applied a "clearly erroneous" standard of review to an acceptance of responsibility determination. *Id.* at 432.

III.

Turning to the merits, the district court did not clearly err in declining to award Cheatwood a reduction for acceptance of responsibility under the circumstances presented.

Application Note 2 in the commentary is central to application of the § 3E1.1 guideline here.  It begins with a general rule that a reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  U.S.S.G. § 3E1.1 cmt. n.2.  This mirrors the direction in Application Note 1(A) to consider whether a defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction."  *Id.* cmt. n.1(A).

Application Note 2 further emphasizes the limited circumstances in which a defendant proceeding to trial may qualify for a reduction for acceptance of responsibility as an exception to the general rule.  "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial."  U.S.S.G. § 3E1.1 cmt. n.2.  The commentary does not provide an exhaustive list of such rare situations, but rather provides an example when this "may occur": "[W]here a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."  *Id.*  "In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."  *Id.*

10

Here, a combination of circumstances in the record supports the district court's denial of an acceptance of responsibility reduction. First, Cheatwood proceeded to a bench trial where he cross-examined each of the government's witnesses, including a noticed expert witness, and he raised evidentiary objections to the documentary evidence the government sought to introduce. Second, although Cheatwood stipulated that he was a convicted felon and he knew he was a felon, two other elements of the offense remained "for the Court, as the trier of fact in this case, to consider," J.A. 162, specifically that he "knowingly possessed a firearm," and "the firearm had travelled in interstate commerce." *United States v. Smoot*, 690 F.3d 215, 218 n.2 (4th Cir. 2012). Thus, Cheatwood "put the government to its burden of proof" and he disputed issues that "relate to factual guilt." U.S.S.G. § 3E1.1 cmt. n.2; *see Smoot*, 690 F.3d at 225 ("Because [the defendant] . . . attacked the legal sufficiency of an essential element of his offense, he contested his guilt in fact.").

Third, the district court denied Cheatwood's motion to suppress without a hearing, on the basis of the documents the government relied upon in response to the motion. By requesting a bench trial, Cheatwood, in effect, required the district court to hold, and the government to present witnesses at, a hearing that the court had declined to hold in the first instance. It was entirely Cheatwood's right to proceed through trial to accomplish that, but nothing in the guidelines suggests the manner in which he did so was a viable pathway for preserving a two point reduction for acceptance of responsibility. Indeed the language of the commentary suggests his trial strategy was fundamentally at odds with sparing the

11

government from being put to its "to its burden of proof at trial." U.S.S.G. § 3E1.1 cmt. n.2.[7]

Cheatwood's arguments on appeal are unavailing. He argues that he clearly accepted responsibility because he did nothing at his "bench trial [that] challenged any factual issues related to guilt." Opening Br. at 4. He also claims "he proceeded to trial but also admitted the factual elements of the charge and did not deny any relevant conduct." *Id.* at 12. These, however, are inaccurate descriptions of the record. Cheatwood challenged factual issues related to guilt by cross-examining government witnesses, objecting to evidence the government presented, and leaving for the district court to determine whether the government met its burden of proof on two elements of the offense.

With respect to the scope of cross-examination, Cheatwood contends the government's case was limited to countering Cheatwood's arguments advanced in his motion to suppress, and so his questions on cross-examination also related only to his motion to suppress. This, too, takes an overly restricted view of the record. There was no

---

[7]    In so holding, we do not adopt the government's suggestion that "a motion to suppress 'relates to' factual guilt" and "going to trial solely to appeal an adverse suppression issue may 'relate to' factual guilt," for purposes of Application Note 2. Response Br. at 33-34. Such a suggestion is in tension with this court's prior recognition that a defendant's "decision to proceed to trial to preserve his right to appeal the denial of his suppression motion would not have disqualified him from receiving an acceptance of responsibility reduction." *United States v. Jones*, 233 Fed. App'x 273, 280 (4th Cir. 2007) (citing *United States v. Muldoon*, 931 F.2d 282, 289 (4th Cir.1991)). Nor do we agree with Cheatwood's contention that the district court interpreted his mere "*filing* of a motion to suppress" as a "challenge to factual guilt." Opening Br. at 14 (emphasis added). Rather, the district court based its decision on "this situation" before it, not limited to Cheatwood's mere filing of a motion to suppress. J.A. 180. Accordingly, for the reasons set forth in the text, we affirm on the basis of the whole record as set forth herein.

mention by the government of the motion to suppress in its opening statement, nor any suggestion why the government was presenting six witnesses except to meet its burden on all essential elements. Indeed, in its opening statement, the government stated "this is a simple felon in possession case," and it outlined evidence including Cheatwood's actions in "appearing to deposit something on the backseat floorboard," officer O'Brien's actions in locating a container under the driver's seat holding the firearm, Cheatwood's admission the firearm was his, and that the firearm had "crossed state lines at some point." J.A. 63-64. All such evidence was essential to the factual elements of guilt, and well within the government's prerogative "to complete the story of the crime on trial." *United States v. Underwood*, 95 F.4th 877, 892 (4th Cir. 2024); *see Smoot*, 690 F.3d at 218.

Moreover, Cheatwood's own opening statement at trial did not take off of the table any of the unproven factual elements, where he stated "[t]he evidence in this case will *likely* show what the government proffered it to show," J.A. 64 (emphasis added), leaving intact both Cheatwood's "presumption of innocence" and "the government's burden" of proof "beyond a reasonable doubt." *United States v. Blankenship*, 846 F.3d 663, 679 (4th Cir. 2017). It is also inaccurate to suggest that all of Cheatwood's questions on cross-examination "only . . . bore on his motion to suppress." Reply Br. at 2. He questioned officer Finney, for example, about Cheatwood's statement that he "had the firearm for self-defense" and he was "afraid of being black bagged," or "kidnapped." J.A. 96-97. He questioned officer Reinhard about whether she discussed with Finney "who was going to be charged for possession of the firearm that was found." J.A. 127. He questioned agent

13

Davis about how many times the firearm "changed hands" before Cheatwood purchased it. Case No. 7:21-CR-0026-EKD (W.D. Va.) Document 53 at 15.

Cheatwood nonetheless emphasizes his additional statement in opening that "[w]e are here simply because a conditional plea was not offered and Mr. Cheatwood is preserving his appellate rights." J.A. 64. On appeal, he characterizes his actions as proceeding to a limited trial "solely to preserve his appellate rights." Oral Argument at 0:19-0:25. But whether Cheatwood "put[] the government to its burden of proof at trial," U.S.S.G. § 3E1.1 cmt. n.2, is an inquiry that reasonably looks beyond Cheatwood's opening statement and his subjective intentions at trial. It involves consideration also of what the government was required to do by operation of its burden of proof, as well as Cheatwood's actual conduct in insisting on a trial, stipulating to some but not all elements, cross-examining witnesses, and objecting to evidence.[8]

Cheatwood suggests he preserved his ability to receive an acceptance of responsibility reduction by raising only limited, non-factual, arguments related to the

---

[8] Cheatwood's suggestion that this case is comparable to *Muldoon*, 931 F.2d at 289, "because of the government's refusal to agree to a conditional plea," Opening Br. at 10, is unpersuasive. In *Muldoon*, the defendant "offered to plead guilty to [a] greater offense of bribery, reserving an appeal to make a constitutional and statutory challenge to wiretaps." 931 F.2d at 289. "When the government rejected this condition," the defendant proceeded to a trial at which "[h]e was content to let his counsel argue that the government's proof showed only illegal gratuities." *Id.* Here, by contrast, there is no evidence in the record regarding a plea offer by defendant, much less the nature of the negotiations as the court described in *Muldoon*. *See id.* at 288. Cheatwood's statement in opening argument that "a conditional plea was not offered," J.A. 64, begs the question who would not agree to a plea offer and on what conditions it was sought. In sum, the record here is insufficient to support acceptance of responsibility based upon plea negotiations. Moreover, Cheatwood's conduct at trial was not limited to "let[ting] his counsel argue," as it was in *Muldoon.* 931 F.2d at 289.

14

elements of possession and interstate commerce. With respect to the possession element, for instance, Cheatwood notes that he admitted to police his possession of a firearm, and Cheatwood did not object to playing his confession at trial. He further notes counsel's concession in closing: "I don't think there's any dispute that he had possession of a firearm." J.A. 164. This suggestion, however, misses the bigger picture in that the government still was put to its burden of proof, in the first place, by introducing the confession and testimony related to it; and the district court still had to determine beyond a reasonable doubt that the confession established the requisite "dominion and control over a gun located [behind] the driver's seat of a car." *United States v. Min*, 704 F.3d 314, 323 (4th Cir. 2013). Further, while Cheatwood limited his closing argument to a constitutional challenge based upon *Bruen*,[9] this argument occurred after the government had already rested. Possession remained an open issue during the government's presentation of its case, especially in light of evidence about the other occupant of the vehicle and Cheatwood's cross-examination of officer Reinhart about "who was going to be charged for possession of the firearm." J.A. 127.

With respect to the interstate commerce element, Cheatwood contends he merely preserved "a potential legal issue" by questioning whether the government "established the nexus requirement." Reply Br. at 6 n. 4. But the key inquiry is whether "*[a]t least in part*, [the defendant] went to trial to attempt" to challenge an essential element of conviction. *Dickerson*, 114 F.3d at 470 (emphasis added). Here, as Cheatwood himself concedes on

---

[9] Although Cheatwood raised this argument at trial, he does not pursue it on appeal.

15

appeal, his challenge to the interstate commerce element "arguably relate[d] to factual guilt." Reply Br. at 6 n. 4. Moreover, the interstate commerce element had little to do with Cheatwood's motion to suppress, and the government was required to notice and present an expert witness to establish this element. Accordingly, the district court was within its discretion to find Cheatwood did not "clearly demonstrate[] acceptance of responsibility." U.S.S.G. § 3E1.1(a).

Finally, Cheatwood turns to policy arguments. For example, he asks rhetorically, "Was he to sit silent and not question" the government's witnesses? Opening Br. at 2. "If so, would he not forfeit his ability to appeal the motion to suppress and the court's decision not to allow him to question the officer at a hearing?" *Id.* However, our decision is a narrow one limited to the facts and circumstances as they actually unfolded. We do not opine on hypothetical circumstances not before the court, particularly whether the government would assert forfeiture, much less whether this court would find forfeiture, under counter-factual circumstances. Nor do we purport to delineate as a matter of law all the scenarios in which a defendant may proceed to trial after losing a motion to suppress, and still clearly demonstrate acceptance of responsibility. We hold only that given Cheatwood's actual course of action at trial, the district court did not clearly err in denying an acceptance of responsibility reduction.

IV.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

16